UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODI A. SCHWENDIMANN, et al.,

    Plaintiffs,                                   Civil Action No. 19-CV-12139

vs.                                           HON. BERNARD A. FRIEDMAN

STAHLS', INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE WILLFUL AND INDIRECT INFRINGEMENT CLAIMS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

This is a patent infringement case in which plaintiffs Jodi A. Schwendimann ("Schwendimann") and NuCoat, Inc. ("NuCoat") allege that products sold by Stahls', Inc. ("Stahls") infringe three of Schwendimann's patents directed to coating technology for preparing a transfer sheet commonly used in heat transfer (or "iron-on") T-shirt customization, U.S. Patent Nos. 6,410,200 (the "'200 patent"), 6,723,773 (the "'773 patent"), and 7,008,746 (the "'746 patent") (collectively, the "patents-in-suit").

This matter is presently before the Court on defendant's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the willful and indirect infringement claims of plaintiffs' first amended complaint (the "FAC"). Defendant argues that plaintiffs have failed to plausibly allege defendant's knowledge of the patents-in-suit, willful infringement, and knowledge of infringement. Plaintiffs have responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2) the Court shall decide this motion without a hearing. Accordingly, the hearing scheduled for January 13, 2021, is canceled.[1] For the reasons set forth below, the Court shall grant the motion.

---

[1] The technology tutorial that is also set for January 13, 2021, at 11:00 a.m., however, will proceed as scheduled.

*I. Procedural History*

Plaintiffs filed their original complaint on July 22, 2019, alleging that defendant's products infringe the '200 and '773 patents. Plaintiffs filed the FAC on August 12, 2020, further alleging that defendant infringes the '746 patent. Plaintiffs allege that, in addition to directly infringing the patents-in-suit, defendant is liable for "indirect" (i.e., induced and contributory) infringement, and that defendant's infringement is willful. In lieu of answering the FAC, defendant filed the instant motion. At this stage of the case, defendant does not challenge plaintiffs' direct infringement claims. However, defendant moves to dismiss the willful and indirect infringement claims.

*II. The Patents-in-Suit*

The patents-in-suit, a patent "family" entitled "Polymeric Composition and Printer/Copier Transfer Sheet Containing the Composition," were filed in the 2000-2003 timeframe and issued in the 2002-2006 timeframe.[2] *See* FAC Ex. A ('200 patent), Ex. B ('773 patent), Ex. C ('746 patent).

The patents-in-suit are directed to coating technology for preparing a transfer sheet commonly used in heat transfer (or "iron-on") T-shirt customization. The transfer sheet is usable to transfer an image printed (or otherwise "imaged") thereon from the transfer sheet to a fabric (or other "receptor") under the application of heat and pressure. For example, as shown in Figure 4 of the '200 patent, reproduced below, an end-user can use the transfer sheet (50) to customize a T-shirt (62) with a selected design. In this example, the end-user can print the design on the transfer

---

[2] The patents-in-suit claim benefit of a provisional patent application filed on April 1, 1999. The '200 patent, the first-filed "parent," was filed on March 31, 2000, and issued on June 25, 2002. The '773 and '746 patent are later-filed "child" divisionals. The '773 patent, a divisional of the '200 patent, was filed on September 13, 2001, and issued on April 20, 2004. The '746 patent, a divisional of the '773 patent, was filed on September 12, 2003, and issued on March 7, 2006.

2

sheet (50) with a copier or printer, and, after placing the transfer sheet (50) on the T-shirt (62), run an iron (64) across the back (52A) of the transfer sheet (50) to transfer the design to the T-shirt (62).

**FIG. 4**



*Id.* at Ex. A, at 5.

The parties agree which types of products are and are not covered by the patents-in-suit. While the patents-in-suit are directed to the transfer "sheet," as understood by the parties, the patents-in-suit generally cover transfer "products." More importantly, the patents-in-suit are "light fabric" (as opposed to "dark fabric") transfer product patents, although the patents-in-suit do not speak to the color of the fabric itself. In other words, the patents-in-suit cover transfer products used to transfer images to white or otherwise light-colored fabrics, not those used to transfer images to dark-colored fabrics.

Relevant to the following discussion of plaintiffs' factual allegations, *see infra* Sections IV and V, Schwendimann's numerous transfer product patents include many others

3

unrelated to the patents-in-suit, including dark fabric transfer product patents, as well as other light fabric transfer product patents.

### III. Legal Standards

#### A. Pleading Standards

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to make such a showing may be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

When deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all the factual allegations contained in the complaint as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). In order to survive a Rule 12(b)(6) motion, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

#### B. Enhanced Damages and Willful Infringement

In cases of infringement, the Patent Act provides that district courts "shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284. The statutory mandate is designed to ensure "full compensation" for "any damages" suffered "as a

4

result of the infringement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983). To the extent actual damages cannot be proven, the floor is set at "a reasonable royalty for the use made of the invention by the infringer." Section 284; *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*en banc*).

Section 284 also provides that district courts may award enhanced damages "up to three times the amount found or assessed." Section 284; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016). In *Halo*, the Supreme Court stated that such damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." 136 S. Ct. at 1932. Observing a long history of awards of enhanced damages, the Supreme Court cited conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* Accordingly, when deciding whether to award enhanced damages, district courts should "take into account the particular circumstances of each case" in recognition that "such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1933-34.

With respect to liability for willful infringement, in *Halo* the Supreme Court rejected the Federal Circuit's *Seagate* test, which required a two-prong showing of objective recklessness and subjective willfulness. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). The Supreme Court explained that the "principle problem" with the *Seagate* test is the first prong: "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." 136 S. Ct. at 1932-33. As to the difference between willful and typical infringement, Justice Breyer, writing in concurrence, stated that an award of enhanced damages is not justified "simply because . . . the infringer knew about the patent *and nothing more*." *Id.* at 1936 (Breyer,

5

J., concurring) (emphasis in original). While "intentional or knowing" infringement "may" justify an award of enhanced damages, "[i]t is 'circumstanc[e]' that transforms simple knowledge into such egregious behavior, and that makes all the difference." *Id.* (quoting *id.* at 1933).

Following *Halo*, the Federal Circuit has held that liability for willful infringement requires knowledge of the patent and intentional or knowing infringement – i.e., acting despite a risk of infringement that was either known or so obvious that it should have been known. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (apart from "considerations of egregious behavior and punishment" relevant to district court discretion to award enhanced damages, the underlying concept of willfulness "requires a jury to find no more than deliberate or intentional infringement") (citing *Halo*, 136 S. Ct. at 1933); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) ("subjective willfulness alone— i.e., proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer—can support an award of enhanced damages") (citing *Halo*, 136 S. Ct. at 1933) (internal quotation marks and citations omitted); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (knowledge of the patent "continues to be a prerequisite to enhanced damages").

### C. Indirect Infringement

In addition to describing acts of "direct" infringement, the Patent Act also establishes liability for "indirect" (i.e., induced and contributory) infringement. *See* 35 U.S.C. § 271(a)-(c). In contrast to direct infringement, which is a strict liability offense, liability for indirect infringement requires both knowledge of the patent and knowledge of infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015) (citing and reaffirming *Aro* in the context of contributory infringement and reaffirming *Global-Tech* in the context of induced infringement); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (applying

6

*Aro* to the context of induced infringement and holding that the "actively induces" element of § 271(b) requires "knowledge of the relevant patent" and "knowledge that the induced acts constitute patent infringement"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (holding that the "knowing" element of § 271(c) requires that "the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing").

With respect to an accused infringer's knowledge of infringement, in *Commil* the Supreme Court illustrated the necessary "mental state" by drawing a distinction between one who "knew the acts were infringing" and one who, after reasonably reading the patent's claims differently from the patentee, "knew the acts might infringe." 135 S. Ct. at 1928. For instance, in *Aro* the Supreme Court found contributory infringement liability for a supplier whom the patentee informed by letter of both the patent and the "obvious[ness]" of infringement. 377 U.S. at 488-90. In *Global-Tech*, the Supreme Court affirmed induced infringement liability for a copier who, having knowledge of the patent under the doctrine of willful blindness, similarly willfully blinded itself to knowledge of infringement because it copied all but the cosmetic features of the patentee's innovative design, "demonstrating [it] knew it would be causing customers to infringe." *Commil*, 135 S. Ct. at 1927 (citing *Global-Tech*, 563 U.S. at 770-71).

   IV. Plaintiffs' Factual Allegations

For present purposes, the Court accepts as true the following factual allegations set forth by plaintiffs in the FAC.

Schwendimann and her companies, including co-plaintiff NuCoat and, before NuCoat, Cooler Concepts, Inc. ("CCI") (now a NuCoat subsidiary), have been in the business of transfer products for many years. *See* FAC ¶¶ 2, 86, 90-91. Schwendimann features her numerous

7

transfer product patents on the "Technical Achievements" page of NuCoat's website. *Id.* ¶¶ 97, 100; *see also* Def.'s Mot. Ex. 1, at 2-3 (printout of http://nucoatinc.com/technical-achievements/). The Technical Achievements page lists thirty-five transfer product patents, six of which are listed a second time as light fabric transfer product patents, and twenty of which are listed a second time as dark fabric transfer product patents, for a total of sixty-one entries. *See* Def.'s Mot. Ex. 1, at 2-3.

Schwendimann became the owner of the patents-in-suit by assignment of the "MJS patents," a portfolio of transfer product patents previously owned by MJ Solutions GmbH ("MJS"). *See* FAC ¶¶ 1, 17-19, 21, 111-112. Before Schwendimann, MJS owned the patents-in-suit by assignment from the original assignee, Foto-Wear, Inc. *Id.* ¶ 21. NuCoat "marks" items related to its light fabric transfer products with the patents-in-suit, including product labels, instruction sheets, and the pricing sheets it sends to customers. *Id.* ¶¶ 93-96. Similarly, two of the patents-in-suit, the '773 and '746 patents, are listed on the Technical Achievements page. In particular, the '773 and '746 patents are listed among the transfer product patents, and the '746 patent is listed a second time among the light fabric transfer product patents. *See* Def.'s Mot. Ex. 1, at 2-3.

Defendant competes with NuCoat for sales of light fabric transfer products. *See* FAC ¶¶ 4, 22, 92. Defendant's light fabric transfer products include its "InkTra" and "CAD-COLOR® SuperTEK™ (Gloss & Matte) Clear" products (collectively, the "Accused Light Fabric Transfer Products"). *Id.* ¶¶ 23-24. With respect to the patents-in-suit, defendant allegedly directly infringes by selling the Accused Light Fabric Transfer Products and causes end-users to infringe by instructing them how to use the Accused Light Fabric Transfer Products. *Id.* ¶¶ 23-82, Ex. C (InkTra product instructions), Ex. D (CAD-COLOR® SuperTEK™ (Gloss & Matte) Clear product instructions).

Plaintiffs allege that the parties have a history of communicating about Schwendimann's transfer product patents. For instance, in the 2006-2007 timeframe, CCI, on the first of three occasions when it sent defendant samples of its light fabric transfer products, stated that they were covered by "certain patents" admittedly "unrelated to the Patents-in-Suit." *Id*. ¶¶ 87-89.

More recently, in the 2015 timeframe, Schwendimann communicated with defendant's representative, then Vice President and CFO of GroupeSTAHL, about unspecified transfer product patents, including a request that defendant take an unspecified license. *Id*. ¶¶ 99-102, 105-109. Plaintiffs allege that in the course of communications, defendant reviewed the Technical Achievements page. Specifically, Schwendimann emailed a link to the Technical Achievements page, writing that it "will show several of our patents." *Id*. ¶ 100. Defendant's representative responded, writing that "I need some time to better understand your patents, which there are many," and that "I have asked my patent attorney to do a simple review of your patents." *Id*. ¶ 101. Defendant's representative emailed again months later, writing, with reference to the "many different patents," that he had "gotten thru most of them." *Id*. ¶ 102.

In the 2015-2016 timeframe, Schwendimann and her counsel had similar communications with defendant's counsel about unspecified transfer product patents, including unspecified MJS patents and unspecified non-dark fabric transfer product patents. *Id*. ¶¶ 110, 113-116. Plaintiffs allege that in the course of communications, they indicated their belief that unspecified MJS patents and unspecified non-dark fabric transfer product patents cover the Accused Light Fabric Transfer Products. As to the MJS patents, Schwendimann's counsel emailed multiple times requesting a call to discuss "some of the MJS patents that are believed to additionally cover Stahls' products." *Id*. ¶¶ 110, 113, 115. As to the non-dark fabric transfer

9

product patents, defendant's counsel, in an email, referenced a call in which Schwendimann "indicated for the first time that she believed that Stahls' products infringe other of her patents outside the 'Dark Transfer Portfolio.'" *Id.* ¶ 114.  In the most recent email communication, Schwendimann's counsel wrote that "[w]e are also still investigating these and other of Schwendimann's and MJS' patents as they relate to Stahls' light transfer . . . products." *Id.* ¶ 116.

Despite the communications about Schwendimann's transfer product patents, defendant never took a license from plaintiffs or ceased sales of the Accused Light Fabric Transfer Products.  *Id.* ¶ 118.

### V. Analysis

#### A. Defendant's Alleged Knowledge of the Patents-in-Suit

The Court shall first address the common requirement for liability for willful infringement and liability for indirect infringement – i.e., knowledge of the patent.

As noted above, NuCoat marks items related to its light fabric transfer products with the patents-in-suit, and defendant competes with NuCoat for sales of light fabric transfer products.  Further, the parties have a history of communicating about Schwendimann's transfer product patents, in the course of which, among other things, defendant reviewed the Technical Achievements page.  Construing the FAC in the light most favorable to plaintiffs, the Court finds that these factual allegations support reasonable inferences that defendant had knowledge of Schwendimann and her companies, knowledge of NuCoat's light fabric transfer products, and knowledge of Schwendimann's transfer product patents.  *See id.* ¶¶ 84-86, 92.

However, plaintiffs further allege upon "information and belief" that defendant had not only general knowledge of Schwendimann's transfer product patents, but also specific knowledge of the patents-in-suit.  *Id.* ¶¶ 83, 98.  Plaintiffs' allegations leave defendant's knowledge up to inference; the issue is whether such an inference is reasonable.

10

Defendant argues that an inference of its knowledge of the patents-in-suit is not reasonable. With respect to NuCoat's marking, defendant points out the lack of factual allegations that defendant is a NuCoat customer or has otherwise seen the marked items. *See* Def.'s Mot. at 8; *see also*, Def.'s Reply at 4 (citing, *inter alia*, *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1188 (C.D. Cal. 2014) ("Actual knowledge—not constructive knowledge—is the criterion.")). With respect to its review of the Technical Achievements page, defendant points out that while the '773 and '746 patents are listed, they are listed among many other transfer product patents unrelated to the patents-in-suit. *See* Def.'s Mot. at 9 ("NuCoat's 'Technical Achievements' webpage listed 65 patents.") Similarly, with respect to the parties' communications, defendant points to the lack of factual allegations that plaintiffs identified the patents-in-suit, as opposed to Schwendimann's many other unrelated transfer product patents. *See* Def.'s Reply at 2-4. In the absence of references to the patents-in-suit, defendant argues that plaintiffs' factual allegations fail to "tie" defendant's knowledge of Schwendimann's transfer product patents to the patents-in-suit. Def.'s Mot. at 9 (citing, *inter alia*, *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) ("Knowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent.")).

With respect to the communications, defendant also emphasizes that plaintiffs' factual allegations ambiguously reference unspecified transfer product patents, not the patents-in-suit. *See* Def.'s Mot. at 10; Def.'s Reply at 2-3. Defendant argues that rather than being an oversight, the ambiguous references to unspecified transfer product patents are calculated. *See* Def.'s Reply at 2-3. Specifically, defendant argues that plaintiffs cannot truthfully fashion their factual allegations to reference the patents-in-suit because the topic of the communications was dark fabric transfer product patents, rather than the patents-in-suit. *See* Def.'s Mot. at 9 n.3

11

("Plaintiffs' crafty quoting of the emails is intended to create the false impression that the topic of the emails was the Patents-in-Suit, when, in fact, the topic of the emails was certain patents from Schwendimann's 'dark fabric transfer' portfolio, which are not at issue in this case.").

Plaintiffs, on the other hand, argue that an inference of defendant's knowledge of the patents-in-suit is reasonable. With respect to NuCoat's marking, plaintiffs, although pointing out defendant's competition with NuCoat for sales of light fabric transfer products, *see* Pls.' Resp. at 12, do not dispute the lack of factual allegations that defendant is a NuCoat customer or has otherwise seen the marked items. However, with respect to defendant's review of the Technical Achievements page, plaintiffs argue that they plausibly allege upon "information and belief" that defendant's representative and patent attorney reviewed the listed '773 and '746 patents, and that defendant's patent attorney's review would have included the '200 patent because it is in the same patent family as the '773 and '746 patents. *See* FAC ¶¶ 103-104.

Despite plaintiffs' factual allegations leaving defendant's knowledge of the patents-in-suit up to inference, the Court finds that such an inference is reasonable. While the Court agrees with many of defendant's positions,[3] defendant does not adequately rebut the plausibility of plaintiffs' allegation that defendant had knowledge of the patents-in-suit through its review of the Technical Achievements page. Contrary to defendant's "tying" argument, plaintiffs allege more than knowledge of a patent portfolio. *Cf. Finjan*, 2017 WL 2462423, at *5. As noted above, plaintiffs allege that defendant, having received a list of Schwendimann's transfer product patents via the Technical Achievements page, proceeded to review them, including with the involvement

---

[3] For instance, given the lack of factual allegations that defendant is a NuCoat customer or has otherwise seen the marked items, the Court finds that NuCoat's marking does not support an inference of defendant's actual, as opposed to constructive, knowledge of the patents-in-suit. *See Deckers*, 45 F. Supp. 3d at 1188. Moreover, with respect to the communications, defendant rightfully emphasizes that plaintiffs' factual allegations ambiguously reference unspecified transfer product patents.

12

of defendant's patent attorney. Construing the FAC in the light most favorable to plaintiffs, the Court finds that these factual allegations support a reasonable inference that defendant had knowledge of the patents-in-suit through its review of the Technical Achievements page.

At the same time, the Court gives weight to the undisputed lack of factual allegations that plaintiffs identified the patents-in-suit. Likewise, the Court gives weight to defendant's assertion that the topic of the communications was dark fabric transfer product patents. Although disputing this assertion as to the 2015-2016 timeframe, plaintiffs do not dispute it as to the 2015 timeframe, when defendant reviewed the Technical Achievements page. Accordingly, the Court qualifies its finding with the recognition that defendant would have gained knowledge of the patents-in-suit through its review of the Technical Achievements page, if at all, outside the context of communications about either the patents-in-suit or the Accused Light Fabric Transfer Products.

*B. Defendant's Alleged Willful Infringement*

Having found that plaintiffs' factual allegations support a reasonable inference of defendant's knowledge of the patents-in-suit, the Court turns to the second requirement for liability for willful infringement – i.e., intentional or knowing infringement.

As noted above, the parties have a history of communicating about Schwendimann's transfer product patents, including, among other things, defendant's review of the Technical Achievements page, plaintiffs' request that defendant take an unspecified license, and plaintiffs' belief that unspecified MJS patents and unspecified non-dark fabric transfer product patents cover the Accused Light Fabric Transfer Products. However, defendant never took a license from plaintiffs or ceased sales of the Accused Light Fabric Transfer Products.

Plaintiffs allege upon "information and belief" that defendant's infringement was, among other things, intentional, knowing, and otherwise willful, therefore entitling plaintiffs to

13

recover treble damages. FAC ¶¶ 131-132. As with defendant's knowledge of the patents-in-suit, plaintiffs' factual allegations leave defendant's willful infringement up to inference; the issue is whether such an inference is reasonable.

The parties frame their arguments around two different pleading standards for willful infringement claims. Following the Supreme Court's *Halo* decision, a debate has emerged at the district court level concerning whether a patentee, in order for its complaint to survive a motion to dismiss willful infringement claims, must allege "egregious infringement behavior." *See*, *e.g.*, *Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F.Supp.3d 377, 382-84 (E.D. Mich. July 13, 2020) (collecting cases and adopting an egregiousness requirement with reliance principally on *Halo*); *Valinge Innovation AB v. Halstead New Eng. Corp.*, No. 16-1082, 2018 WL 2411218, at *6-7 (D. Del. May 29, 2018) (collecting cases and rejecting an egregiousness requirement with reliance on *Halo* and additional Federal Circuit case law).

In other words: Does a patentee only have to plausibly allege intentional or knowing infringement, which, if proven, lays the foundation for a possible award of enhanced damages? Or, in addition to plausibly alleging intentional or knowing infringement, does a patentee have to plausibly allege egregiousness, which, if not proven, prevents an award of such damages? To put this question in context, with respect to willful infringement claims, intentional or knowing infringement is a necessary but insufficient requirement for an award of enhanced damages. As Justice Breyer explained in *Halo*, "simple knowledge" standing alone – i.e., absent circumstances transforming it into egregiousness – does not justify awards of enhanced damages. *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring); *see also Eko*, 946 F.3d at 1378 (describing the underlying concept of willfulness apart from "considerations of egregious behavior and punishment" relevant to district court discretion to award enhanced damages). For example, in the

14

present case, plaintiffs, rather than merely alleging that defendant's infringement was willful, allege that defendant's willful infringement *entitles* plaintiffs to recover treble damages. However, one prominent approach to the egregiousness standard would require plaintiffs to plausibly allege egregiousness *beyond* willful infringement in order to be "entitled" to the requested relief.

With respect to its direct infringement, defendant argues that the only relevant factual allegation is that it never ceased sales of the Accused Light Fabric Transfer Products. Defendant – urging the Court to adopt the "majority view" expressed in *Michigan Motor* – argues that an inference of egregiousness beyond typical infringement is not reasonable under the facts alleged.

Plaintiffs, on the other hand, argue that the relevant factual allegations include their request that defendant take an unspecified license and their indication that they believe unspecified MJS patents and unspecified non-dark fabric transfer product patents cover the Accused Light Fabric Transfer Products. Plaintiffs read these factual allegations as setting forth "numerous discussions about how" defendant infringes the MJS patents, which include the patents-in-suit, and – urging the Court to adopt the view expressed in *Valinge* – argue an inference of intentional or knowing infringement is reasonable. Plaintiffs also argue that the relevant factual allegations include defendant's review of the Technical Achievements page. Collectively, plaintiffs argue, the factual allegations make reasonable the inference that defendant should have had knowledge of infringement, or, at a minimum, refused to confirm infringement in an effort to remain willfully blind.

The Court finds that it need not decide the egregiousness issue because, with respect to defendant's infringement, inferences of intentional or knowing infringement or that defendant

15

refused to confirm infringement in an effort to remain willfully blind, are not reasonable in this case.

The only factual allegations pertaining to either party's knowledge at the time of defendant's infringement are that plaintiffs requested that defendant take an unspecified license and indicated their belief that unspecified MJS patents and unspecified non-dark fabric transfer product patents cover the Accused Light Fabric Transfer Products. Contrary to plaintiffs' reading, these factual allegations do not set forth discussions about "how" defendant infringes the MJS patents, let alone the patents-in-suit. Moreover, even as to plaintiffs' knowledge of infringement, it amounted to nothing more than an unexplained belief, which, as of the most recent communication, plaintiffs were still investigating. And, once again, the Court gives weight to the undisputed lack of factual allegations that plaintiffs identified the patents-in-suit. In the absence of any reference to the patents-in-suit, to the extent plaintiffs indicated their belief of infringement, plaintiffs' factual allegations fail to show that their belief pertained to the patents-in-suit, as opposed to Schwendimann's many other unrelated transfer product patents. Accordingly, even construing the FAC in the light most favorable to plaintiffs, with respect to defendant's infringement, the Court finds that these factual allegations do not support a reasonable inference of intentional or knowing infringement.

With respect to defendant's review of the Technical Achievements page, although plaintiffs' factual allegations support a reasonable inference of defendant's knowledge of the patents-in-suit, defendant would have gained knowledge of the patents-in-suit through its review of the Technical Achievements page, if at all, outside the context of communications about either the patents-in-suit or the Accused Light Fabric Transfer Products. Accordingly, even construing the FAC in the light most favorable to plaintiffs, with respect to defendant's infringement, the

16

Court finds that these factual allegations do not support reasonable inferences that defendant should have had knowledge of infringement, or that defendant refused to confirm infringement in an effort to remain willfully blind.

### C. Defendant's Alleged Indirect Infringement

Similar to the second requirement for liability for willful infringement (intentional or knowing infringement), the second requirement for liability for indirect infringement is knowledge of infringement.

Plaintiffs allege that defendant causes end-users to infringe by instructing them how to use the Accused Light Fabric Transfer Products "in a manner that Defendant knows to be infringing." FAC ¶ 129. As with defendant's willful infringement, plaintiffs' factual allegations leave defendant's knowledge of infringement up to inference; the dispute is whether such an inference is reasonable.

The parties largely apply their above arguments with respect to the willfulness claims to the indirect infringement claims, and do not point out any additional relevant factual allegations pertaining to defendant's knowledge at the time of its infringement. Accordingly, for the reasons set forth above with respect to the willfulness claims, even construing the FAC in the light most favorable to plaintiffs, with respect to defendant's infringement, the Court finds that plaintiffs' factual allegations do not support a reasonable inference of knowledge of infringement.

### D. Leave to Amend

To the extent the Court dismisses the willful and indirect infringement claims of the FAC, plaintiffs request leave to amend. *See* Pls.' Resp. at 24. Defendant, on the other hand, argues that the Court should deny plaintiffs' request for leave to amend because any amendment would be futile. *See* Def.'s Reply at 7. Plaintiffs did not submit a proposed seconded amended complaint to their response brief.

As discussed above, with respect to the communications, defendant emphasizes that plaintiffs' factual allegations ambiguously reference unspecified transfer product patents, as opposed to the patents-in-suit. Defendant argues that plaintiffs cannot truthfully fashion their factual allegations to reference the patents-in-suit because the topic of the communications was dark fabric transfer product patents. Rather than disputing defendant's argument or otherwise indicating the possibility of correcting the ambiguity in their factual allegations, plaintiffs request leave to amend in the event that "additional facts" pertaining to defendant's communications about Schwendimann and the patents-in-suit and defendant's opinion of counsel, if any, "become known through discovery." Pls.' Resp. at 25; *see also* Def.'s Mot. Ex. 2, at 2-7 (providing email communications concerning a draft of the FAC, in which plaintiffs' counsel denied defendant's counsel's request, in anticipation of the instant motion, to correct the ambiguity in plaintiffs' factual allegations to the extent possible "'while satisfying plaintiffs' obligations under Fed. R. Civ. P. 11").

In view of plaintiffs' apparent inability to correct the ambiguity in their factual allegations, the Court does not grant plaintiffs request for leave to amend their complaint at this time. Plaintiffs may move for leave to amend their complaint in the future if additional facts become known through discovery.

*VI. Conclusion*

As to the willful and indirect infringement claims of the FAC, plaintiffs' factual allegations support a reasonable inference that defendant had knowledge of the patents-in-suit. However, with respect to the willful infringement claims, plaintiffs' factual allegations do not support reasonable inferences of intentional or knowing infringement, that defendant should have had knowledge of infringement, or that defendant refused to confirm infringement in an effort to

remain willfully blind. Likewise, as to the indirect infringement claims, plaintiffs' factual allegations do not support a reasonable inference of knowledge of infringement. Accordingly, the Court finds that the willful and indirect infringement claims of the FAC should be dismissed. Finally, with respect to plaintiffs' request to amend their complaint, plaintiffs' apparent inability to correct their ambiguous factual allegations to date preclude amendment unless and until additional facts are discovered. Accordingly,

IT IS ORDERED that defendant's motion to dismiss plaintiffs' willful and indirect infringement claims is granted.

IT IS FURTHER ORDERED that plaintiffs' request to amend their complaint is denied without prejudice.

Dated: January 4, 2021
       Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge